Rios v. City of Reno Good morning. My name is Terry Kaiser Cooper, and I represent Luis Rios. There are two things that I want to emphasize because they are critical to this Court's understanding of what is unconstitutional in this case, and they cannot reasonably be disputed. First, in U.S. v. Turbin, decided in 2008, this Court held an officer does not need reasonable suspicion to ask questions of a motorist stopped for a traffic offense, even if the questions are unrelated to the purpose of the stop, as long as the questions are brief and do not unreasonably prolong the stop. In this case, when Mr. Rios is stopped for a minor traffic offense, he is also detained for an additional 30 minutes to one hour beyond the time necessary for the traffic offense for the sole purpose of processing him through the gang intelligence file. He is processed into the gang file because the officer at the time of the stop subjectively believes he has indicators of a gang associate. What is the relief that you want here? We want the relief that we sought at the preliminary injunction to be instated, which is that Mr. Rios be taken out of the gang file and his photographs that were taken improperly of him without his consent returned. We want the gang associate definition declared unconstitutionally vague, and so it does not operate anymore because it is, and I'm perfectly happy to discuss why it's vague. We did in our brief, and I'm ‑‑ He doesn't want to be in the gang file. Absolutely not. Okay. Right. As a gang associate or in any process. Okay. Now, here's my problem with this. And the general order does have a provision in there that in documenting gang-related information, officers will not detain subjects for being merely suspected gang members or associates. Officers will detain suspected gang members or associates only under circumstances which produce articulable facts which reasonably indicate that the person has committed or is committing or is about to commit a crime. Such a standard does not prevent consensual contacts between the police and members of the public, including gang members. Now, my question is, isn't your beef with the officers in a particular situation rather than with the general order? The general order protects your client. If the general order were followed, there'd be no problem. However, the custom and practice of enforcing the general order is quite to the contrary. That's my question. And you're right about that. It's whether there is a custom and practice has been established. There's a custom and practice of violating it. If they were, there's nothing wrong with collecting gang intelligence data. Right. We wouldn't object to that at all. We're saying that the processing and the custom and practice of the way they do this unreasonably detains an ordinary stop that can be for littering, it can be for attacks. Well, was your client, I went through this, and it seemed to me that there was, there seemed to be a legitimate basis for questioning him on the occasions that are in the record here. It was an accident, he was at some place where there was suspicion, there was no violation of his rights based just on the fact that he was in a, in the book. So I'm not quite sure I'm understanding. You're saying it took longer? Yeah. Maybe I can clarify for you. Okay. There are two sets of stops that we're talking about here. The gang, when they put him in the gang file, this is a process that unreasonably prolongs what is a legitimate reason to stop him. If, for example, he's at a, in high school and there's a fight in the high school and they see him standing around, it's legitimate to ask him a few questions. Did you see the fight? If he's in a traffic offense, he fails to yield, or he doesn't come to a complete stop, it's perfectly legitimate to pull him over and give him a ticket or a warning. What we are saying here is that the processing of him into the gang intelligence file goes far beyond what is contemplated in the, in the stops that he is, and most of them are traffic stops. It is far beyond it. And U.S. v. Turbin, decided by this Court, said that you can ask some questions that are unrelated to the purpose of a stop as long as they're brief and they don't unreasonably pertain, prolong the stop. Here, they do. They're 30 minutes to an hour to put someone in, to put him in the intelligence file. And this is done because the officers believe he has, he subjectively, they, they look at him and they subjectively believe that he is a gang member because he has gang indicators. The processing of him into the gang associate file, he can be put in the gang file as a gang associate if he has indicators. And these indicators are so wildly vague that you could put the mother of a gang member in, you could put the next-door neighbor, the teacher. What's your problem, though, with that? If, if, as long as he's, suppose they, instead of stopping him, they just saw, saw, oh, here he comes again, here comes Rios, his brother's in the gang. He's wearing this. He's wearing these clothes. We're putting him in the gang file. And so they put him in the gang file for intelligence purposes. And they don't detain him any, at all. They just put him in the gang file. If they didn't detain him, we wouldn't have any problem with it at all. The problem is the processing of the detaining. It is an unreasonable detention. It is nonconsensual. He is not free to leave. And once you do that, if they, suppose that they ask him some additional questions, he's at the, there's a, because he has gang indicia on him, not because he's in the book, but he looks like he's, you know, looks like he's a member of a gang. And he's, he's been, he's a witness to some episode at the school. They could, they could ask him these questions because of gang indicia, but that has nothing to do with the book. They can ask him a few questions when they stop him for a reasonable, lawful purpose, without question. There, this is not a brief questioning. This is a prolonged period of time that was not disputed. It was not disputed at trial when he testified that putting him in the gang file can take up to an hour. And let me tell you about what those, what they do there, so to make it very clear why it can be so long. This isn't a few questions. This is far beyond that. There are two different kinds of stops he's subjected to. One where he's put into the gang file, where they have this laundry list of these things that, that they do. For example, after a traffic offense, they, they give him the ticket or they warn him, they, they do a records check, all of that. After that, they conduct a separate interview and they fill out a gang interview form. He is ordered out of his car. They call for backup. He can never leave until backup arrives, and that's usually two or three additional cars. He has to sit on the curb. He's ordered not to talk. He's patted down. They put his hand, their hands in his pockets, remove all the items, examine them. When backup arrives, Mr. Rios is taken to the rear of a police vehicle. He is positioned on the bumper. A white blanket is carefully placed behind him. They photograph him. Now, at trial, at the preliminary hearing, they did not object that this was the procedure, and they did not object that it can take up to one hour. Now, the thing that's really the process of him, of, of him into the gang file is totally unrelated to the purpose of the initially lawful stop. It is for intelligence, only for intelligence. And if it was consensual, we would have no problem. But it is not consensual. It is not brief. It is not reasonable. It's not related to the purpose of the stop, and it's unconstitutional. It is not. So if you're in the gang file or any other file, and all of the things you describe are unconstitutional, what difference does it make whether you're in the file or not? I'll tell you what difference it makes. What makes it any worse that a person is in that file or not? What makes it worse is that Mr. Rios is subjected to further stops, not to put him in the gang. Are they lawful, further stops? Pardon? No, they're all unlawful. Completely and utterly. I'm sorry. I'm sorry. I do. Go on. If they're unlawful, what difference does it make whether he's in the file? Because what the gang unit does is they patrol the areas where gang members live. Mr. Rios lives with his parents. It is not his fault his parents bought a home in an area that has gang members. They know him. His vehicle is photographed. He is photographed. When they see him around, they recognize the picture. They know he's in the gang file. This is police misconduct. They stop him for no reason whatsoever. Do you understand my question? Perhaps I did. If he his identity is not in the gang file. Yes. And they stop him illegally and they do anything unconstitutional to him, it's still as bad as even though he's not in the gang file, right? Right. Police misconduct is police misconduct. Now, we have, we have, we're being asked, in effect, to, in some manner, police what's in the police files, right? Say, take this out of these files. And we might, on another case, be asked to say, don't keep any files on these sex offenders. Don't keep any records on these burglars. Don't take any, keep any records on these serial committers of identity fraud. Just eliminate all those kinds of records and then obey the law. Now, isn't that what you're saying here? No. Get rid of all of those records. Go out on the street and obey the law any time you encounter. My client is Mr. Rios. He is not a gang member. He has never been a gang member. He should never be in that file. Well, wait a minute now. That's disputed. That is disputed. There is not one officer. That's disputed, and the district judge reached a determination on that. No, he did not. He did not reach a determination as to whether he was a gang member or legitimately in the gang file. He absolutely did not. Didn't he reach a determination that he wasn't going to grant an injunction, removing him from that based upon evidence in the records that they had of admissions on your client's part? There were no admissions. There were no the police officers interviewed him. According to a field interview report, he admitted to a two-month association with the SST gang. That's at the record on 245 and 636. Every single one, they say he admitted. He did not admit any of that. There's another field interview report, which includes a photograph of him, that states that Rios admitted to associating with the Maravilla gang for approximately 1-1⁄2 years. I'm not saying that that's true or not. It's not true. All I'm saying is that the district judge had that evidence before him and reached a determination. Well, the district judge found that there were no constitutional violations. He did not make a specific ruling as, I find Mr. Rios to be a member of the gang. I'd like the Court to get real here. I'd like for you to just for a moment consider that this is very subjective what goes on. Those factors are subjective. That may be. But what I'm what I think what Judge Levy and what I'm driving at is that what you want us to do is stop the police from harassing him, but irrespective of whether he's in the gang file. You're saying that it's okay for them to keep a gang file. It's okay for them to put him in the gang file if they want, because, you know, based upon his associations. You mean they can't even put him in the gang file? I thought the problem with the gang file was that it was leading to harassment. But you're saying that independently, they just have no right to ever put him in an intelligence file about a gang. The way they maintain the gang file. Which has no – if it had no impact on him. The way they maintain the gang file is unconstitutional. They write things – they write that he makes these admissions. He never sees these admissions, doesn't know that they make them. He has no opportunity to challenge them. If the gang file has no consequence, if it's just idle chit-chat that they want to put in a memo that has no basis for it, and it has no real consequences, then why can't the police do whatever they want? They can have whatever misleading intelligence files they want. Because it leads to him being continually harassed. That's your problem. That's what I'm driving at. That's your problem. It's not that he's in the gang file. And no, it's two things. It's that he's being stopped. It's two things, Your Honor, and I don't mean to be disrespectful. I am passionate about this. It's two things. Number one, if he's stopped for a traffic offense, he is prolonged for up to an hour for this processing, and that prolonging is unconstitutional because there is no basis for it. US v. Turbin makes it clear. Sure, they can ask some questions. If they don't do it, they can't do it. Roberts, so your argument there is stop doing that. You're pleased. Stop, please. Police, stop doing that. If you're going to put him in the gang file, just put him in the gang file. Or have consent. Or have a document that signs off. Mr. Rios, will you consent to being put in the gang file? Absolutely. There is no problem. Counsel. But you consent to me asking you these questions, and I consent. But they've got a process that doesn't allow. I've never heard of an intelligence-gathering process of the police where they have to get the consent of people to be in their intelligence. If they prolong them, there is no reason on earth to stop somebody walking down the street and make them stand there for intelligence-gathering purposes, and they can't leave. See, you're arguing now you're making a different point. You're making the point that they're harassing him, not the actual – take the harassment out of the case. Suppose they didn't harass him. Suppose they didn't take his picture. They didn't do anything. They just see him. They see him. There's a fight nearby. They see him. They know his brother's there. And they just, you know, say, make a notation, yes, we interviewed Mr. Rios, or Mr. Rios was there. Quote, he's an associate of the gang. So, therefore, he's in the gang file. And that there's no actual stopping of it. That's not your complaint, it seems to me, because you can't complain about that. You're complaining about the fact that they're stopping him and they're harassing him. And if that's the injunction that you want, you want an injunction to stop harassing him, not an injunction to get him out of the gang file, if they – if it's effective and they stop harassing him, you shouldn't be concerned about that. Can I address the issue of indicators, please? Because the Court seems to be of the opinion that he's got indicators. And I would like to discuss with those – can I do that? Or if you have a question. Kagan. Well, we – I don't think that that's what's troubling the Court. I think if we go back to the original question that I asked you, what is the remedy that you want? Okay. You seem – you said that you want him out of the book. There's three things I asked for, and I want to discuss the third one, which we haven't gotten to yet. All right. There are three things. We thought – we believe that the definition of a gang associate is unconstitutionally vague because the indicators – it's based on – you can hold somebody because he's got indicators. For example – You're asking – you're giving us a theory, not a request for relief. All right. Okay. We want him out of the gang file because he doesn't belong there. We want the definition found unconstitutional of a gang associate because it contains things that have no relation to gang activity, no relation to criminal activity at all. You can be in a gang file as an associate if you never commit a gang crime and if you never commit criminal activity. It can be based on – So the gang associate gets – is what gets you into the gang file. So we're back to the gang file. That's right. It's the gang associate definition. There is no – you don't need any gang conduct. You don't need any criminal conduct to do that. All you need is an officer to look at somebody and think subjectively, that guy's got indicators. The contact – the contact can be about literally – Suppose they had a category friend of a gang member or known to a – That there is. That is. Known to a gang member. That's right. Right. And suppose they did that just for their records and there were no consequences from their doing that, hypothetically. There were no consequences from their doing that. That's just the way they kept information. Would you have a – would you have a basis for arguing that they shouldn't be able to do that? They can make whatever secret notations that they want. It's the prolonging, it's the hassling, it's the detention. That's right. Of an hour. Okay. I think the suggestion being made is that the remedy that you're seeking isn't what – Can I get to the third remedy? I haven't got – What's the third one? Okay. The third remedy is that it concerns a gang unit officer going to Circus Circus Casino in Reno. This has happened in every casino in Reno. The only reason we're focusing on Circus Circus is they were kind enough to write in their report that it was solely because of the police officer. Police Officer Miller from the Reno Police Department gang unit goes up to the security people. He says, Rios is a dangerous gang member with an extensive criminal history, which is completely false, and he asks them to trespass him. They want him – he wants him removed. Mr. Rios has never previously been trespassed from Circus Circus. He has no – no officer took the stand ever. There's no record of Mr. Rios misbehaving in any way. The remedy that you want here is? We want the request – they had him removed from Circus Circus on the basis of a request by the gang unit, Officer Miller. We want that request – You want an injunction to remove – Preventing. We want an injunction removing the request that he be trespassed from Circus Circus. He's on a list there that he can't be there. That's correct. And I would draw the Court's attention to Excerpts of Record 139, and it says in 139 – and I have additional copies I could certainly – makes it real clear in a second what I'm talking about. It's – in this document from Circus Circus, they – it documents that the officer came up and said, this is a really bad guy, he's a gang member, he's got this huge history, get rid of him. And Circus Circus then promptly did what they asked him to do. I have a different impression here. I read someplace in somebody's brief that he had been previously excluded because of some conduct there. That's why I want you to get – to look specifically at this. The defendants brought this up, and it is completely wrong. Circus Circus says that they checked his record. He was clear on their file. He had never been trespassed from there ever before. The Circus Circus people took the stand. He was not misbehaving. They have no record of him misbehaving. So that – that – What did happen is that somebody else by the name of Luis Cristales-Hernandez was trespassed. My client is not Cristales-Hernandez. This other guy is a different – But I understand that that was the second interview card. There was a further – a first field interview card in which the name was Luis Rios. That's my client. And there was no conflicting Social Security number given. A first interview card that goes back in time to May 12th, 2000. And so that that is some – there's some evidence that he was barred from the casino based on – on May 12th, 2000. No, it's not, Your Honor. And the reason it isn't is it's a different man with a different Social Security number, a different height, and a different weight, and a different name. Somehow his name got in there, but it's a different – look at the description. No, but you're saying that you're – you're pushing Luis Cristales-Hernandez on the second field interview card, and you're combining it with the first interview card, which was for a Luis Rios, and did not give a conflicting Social Security number. I think that's a good – that's a good cue for us to hear from your adversary. And I just wanted to – and I know I've taken too long, but I want to point out to you that he's clear. No officer testified he did any misbehaving. There's no testimony from an officer he ever did any misbehaving in any casino, in any place. I think we – I think we understand your position on that, and we need to hear it. All right. I could have argued the due process stigma plus test shocks the conscience test, but I realize I've got to. It's okay. Good morning. Don Christensen on behalf of the City of Reno. I'll try to respond to the issues that were raised on the – on the first go-around if I could. And I think the Court has hit on one of the key issues here, which is that simply maintaining information on the plaintiff in the gang intelligence file in and of itself does not create any harm and certainly no constitutional violation to the plaintiff. The real question here is, did the policy – can the plaintiff – did the plaintiff show the district court some reasonable basis for it to be able to conclude that mere inclusion in the policy caused some constitutional violation? And there's – there's two aspects to that that the plaintiff failed to show in the district court. One, the district court listened to the live testimony over a couple days of hearing, and it concluded that there really was no constitutional – unconstitutional violation that had ever been established under the evidence, as the district court heard it. There was two categories. One was – that the plaintiff put them in. One was the categories of the six stops over a period of 10 years, from 1997 through 2006. The court went through those in detail. Several of them involved traffic incidents. The plaintiff himself admitted that he had committed those acts. He didn't really argue that there was a basis for not stopping them. He agreed with that. The other – other situations in those first six were situations where the plaintiff was at a scene where there was a crime had been or was about to be – appeared to be about to be committed. And the court found that, again, in those situations, the officers involved had reasonable grounds to – to engage in a dialogue with the plaintiff on those occasions. So he went through those. He found nothing there. He went through the – those are the only ones that are really testified to in court by the plaintiff. There was an affidavit submitted. Other things were referenced there. But, again, the only defendant on this appeal here is the city of Breno. So the plaintiff has to show that somehow the policy caused some claims on constitution violation. The policy being? The policy being the general order of the gang intelligence order. No. She's saying something else, isn't she? At the outset, didn't she say that the general order had the provision that I read from, but that there is a secret policy, and the secret policy is to stop the associates, gang associates, or people suspected of being gang associates, for longer than is required for the stop in order to get a photographer and to put them in a – in a – put them again in the gang file with a picture, and so that a stop that might normally be 15 minutes gets dragged out and it becomes an hour. And Judge Sandoval – That's policy. Okay. That's their – Two aspects of that. One, Judge Sandoval very specifically addressed that aspect of the argument in his order denying the motion. He said that – that neither party really presented any evidence how long a stop of whatever – of whatever the nature was would ordinarily take, and there was no evidence presented to him to be able – for him to be able to conclude that – that any of these stops were unreasonably extended in order to take a photographer and do a field interview. His observation was that there was often more than one officer there at a time. You'd have to have evidence, would you not, of what a normal stop would be for the – for the particular violation or for the particular incident, that – and what the time would be of that, and then compare it against the stops here. And I guess your point is that such evidence was not offered. That's exactly correct. That's what Judge Sandoval specifically observed. He said he just doesn't have enough of a record developed here for him to be able to – to grant this kind of relief that's requested. He said that these sort of activities could be going on concurrently with the other activities that were involved or normally incident to this sort of a stop for any of these offenses or – or when they were speaking with the plaintiff. Can you help me with – we see a lot of cases, particularly out of Nevada, where people are stopped and then for some purportedly routine reason, and then the stop goes on too long, arguably. That's the issue. And some evidence of crime is – is obtained. And then there's a criminal prosecution as a result. And the argument on appeal was that the stop was too long. But that was – is an appeal from a criminal conviction. What is – can you help me on what – what is the law with respect to – to this area where it's alleged that there's a policy of stops, but there's just injunctive relief that we have asked for, and no – nothing actual charges have resulted from any of the stops? Do we have any cases that deal with this? Not that I know of, other than it's – it was plaintiff's obligation to show basically that the stop was extended beyond what normally should be conducted for something incident to the particular case. No, but have we recognized that – I'm just asking whether we have – have we ever – ever recognized – we ever talked about such policies and what – and what they're – when they are legal or when they may be illegal? There's the one case, I think it was a Ninth Circuit case, I think it's discussed in our briefs. Maybe it was the one that counsel was referring to where someone was detained incident to a search warrant being carried out, and the individual was handcuffed, and the court there – it specifically found that there was no showing of the end on the lower court, is my recollection, that the additional questions that were not related to the search, there was no showing that – I think there was – the person was questioning about immigration status, and my recollection is that there was no showing, again, in the lower court that it took any longer than it should have been for it to carry out the search warrant. But the essence of what we're faced with here is whether the district judge abused his discretion in granting an – in refusing to grant an injunction based upon a record. And the record, you're saying, was insufficient to establish the points that the plaintiff would – is trying to make. Specifically with respect to the – With respect to the stops. Whether there was a policy of extending these stops. Well, factually. Impermissibly. Apart from the claim that there's some secret policy there, factually speaking, the district court specifically found – I believe it's in a footnote, I can't tell you which page – but of his order is that nobody presented him with – he just didn't have the evidence to be able to determine whether a stop was extended because of any of these other reasons. And he left that door open for the plaintiff to come back. This case is still ongoing. This is not just a case to obtain a preliminary injunction. It's still sitting there and moving forward in the district court. The plaintiff is free to go forward with whatever evidence he's able to come up with in the future. But he specifically addressed that, Judge Sandoval did. The information about the claim that somehow just being in the gang intelligence file and information about you being in there has caused some constitutional violation, well, there's just no evidence in the record. I mean, what plaintiff argues on that is plaintiff's argument in the briefs is that the police somehow, quote, feel entitled, end quote, or they, quote, feel empowered, end quote, to detain him because his information is in there. I mean, I'm a little confused here as to whether the problem that they're asserting is that they're putting him in the file or the fact that he's in the file already is the problem. You know, it's obscure to me. What's the next note? I'm sorry. Go ahead. I was going to ask, if you're finished answering the question that was before you, I this whole subject matter deals with the status of these persons who are in this file. They're in the file not necessarily because they're committing crimes, but because of a judgment that they're, or a determination that they're a member of a group, right? Right. Now, are there other systematic files that are kept, like, let's say, I'm just going to suggest sex offenders, burglars, somebody that might be on somebody's watch list as a terrorist or anything like that? I don't have any information. There's no information in the record, that's for sure. But, I mean, under Nevada law, sex offenders, certain sex offenders are required to register with respect to keeping their addresses current and things of that nature. I don't know. Those are people who have been convicted? Those are, right, correct. As long as it's not my – I don't know that there is such a thing, but my thought would be that as long as it's not based on some suspect classification. I'm just curious as to how widespread this practice is as it relates to people of status, status of being in a group. Well, I guess I can't respond to that. There's nothing in the record in that regard. All right. But this is just an information gathering. There's nothing per se that being in the file causes any constitutional violation. Now, one more question. The appellant cites Graham v. Jones from the District Court of Oregon. And represents that that's the nearest case to this that they could present. I notice you don't refer to that case. Do you know what the outcome of it was ultimately? Well, I'm familiar with the case. All right. What the case was, was it was decided on a motion to dismiss, is my recollection. And so simply, these are the allegations. The allegations are that being in this file causes unconstitutional violations. And the Court refused to dismiss it. No, I think the district court did dismiss it, but the – but the – I can't remember if this went to the Ninth or the – this is the district court decision. Excuse me. The Court just said that, well, that's your allegation. If you can – proving it's a different thing, but this is on a motion to dismiss. So we're only going by your allegations. Yeah. But do we know – do we know what the ultimate disposition of that case was? No. Beyond that, I don't have any information. All right. With respect to the circus, Circus Circus, I was going to try to find my reference in the – I think that is at page 140. Isn't the claim here a due process claim, stigma plus? On the Circus Circus aspect? Yes. I'm not sure what the claim is. It's sort of a reputational more than anything, which – Yeah, but there has to be some sort of a – but beyond reputation, doesn't there have to be a deprivation of a liberty interest? Some interest protected by the due process clause. Due process clause. Right. I thought that one argument that you had made was that he had no such liberty interest because he was unlawfully there. Well, that was – that was mine. It's sort of – it's the idea that if this police officer said these things, it didn't – what did it matter? Because he had already – had already been, in the terms of our parlance in Nevada, 86 twice before. Well, if you have to show a liberty interest and you aren't free to be at the place that you're supposed to be, that you're – where they say your liberty is being deprived, then you wouldn't have a claim, but she's disputing that. Right. And if – at pages 140 and 141 of the excerpt, on page 140, supposedly the incident involving the plaintiff, number one, Plaintiff Luis Rios is never mentioned on page 140, the incident report for Circus Circus. It refers to a Luis Noberto, which Noberto, I believe, is plaintiff's middle name, but he's referred to as Luis – Luis Noberto. On the subsequent page, 141, there's a reference to a Luis Rios with the same date of birth as the plaintiff, which is on the prior page, 2-7-1982. And on May 12th of 2000, this person by the name of Luis Rios, the name of the plaintiff with the identical date of birth of the plaintiff, had been 86th by police – or by security at Circus Circus. Was there any testimony from Circus Circus about that particular entry? I – I believe. I wasn't – I didn't conduct – I wasn't there at the hearing. My understanding is that apparently a security officer did testify. I don't think that transcript is part of the – part of the recerpt here, though. So that's our – I mean, if you look at these and you match them up, it's all the same. It appears to be the same individual that had been previously 86th twice before. You've pointed out that this is a preliminary injunction proceeding and that there will – could be a trial on the permanent injunction. Certainly. In which this could be fleshed out. Certainly. And the district court specifically left open the possibility. This is what I've identified that I haven't been presented with evidence-wise as far as the claim that stops were unduly prolonged. This is – you know, you're free to come back to me in the future. This was not consolidated, I don't believe, for a – with the final preliminary injunction sort of a hearing. So that's still open to the plaintiff. I have a motion to supplement the record. And I was going to ask counsel if there's any objection to that. No, I don't object to that. But I would like to provide you with the case law for the question that Your Honor, Judge Walker asked. You asked for some kind of – or I think you asked, Judge Schroeder. There are two cases that deal specifically with how long it lasts. Wait. Just a moment. Let's try to do this. Are there any further questions of the defendant's counsel? Thank you. Now, did you want to add something briefly? Oh, very briefly. I believe you referred and requested some case law or some specifics as to how long a traffic stop should take. There are two cases by the Ninth Circuit decided very recently that specifically address that. U.S. v. Mendez decided in 2007, and it is 476 F3D 1077, where an officer testified that an ordinary traffic stop is 8 minutes. And U.S. v. Turbin decided in 2008, 517 F3D 1097, an officer testified and a court accepted that an ordinary traffic stop is 14 minutes. So we are saying that that's maybe reasonably established. It's 8 to 14 minutes. We're saying – So that's the law of the Ninth – I'm new to the Ninth Circuit. Yes. That's correct. The law of the Ninth Circuit is that once it goes over 14 minutes, then it's unconstitutional? No, that is not. What U.S. v. Turbin said, Your Honor, is that that is the amount of time for a traffic stop. It is okay to ask some – As a matter of law. I read it that way. Okay. We can read the cases. Okay. We appreciate the arguments of counsel. The case just argued is submitted. The motion to supplement the record will be granted and will enter in order to that effect. And that concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Leavy, Walker